

# THE REPUBLIC OF LIBERIA
### LIBERIA MARITIME AUTHORITY

99 Park Avenue, Suite 1830
New York, NY, 10016, USA
Tel: +1 212 697 3434
Fax: +1 212 697 5655
E-mail: registrations@liscr.com
Website: www.liscr.com

## OFFICE OF THE DEPUTY COMMISSIONER
## OF MARITIME AFFAIRS OF THE
## REPUBLIC OF LIBERIA

<u>20</u> Day, <u>June</u> Month, <u>2014</u> Year

**Received for record at** <u>8</u> h <u>02</u> m AM , E.D.S.T.

**Recorded in BOOK** <u>PM 66</u> at PAGE <u>440</u> .

**Name of Vessel :** <u>AUDACIOUS</u>

**Official Number :** <u>16235</u>

**GIVEN** under my hand and seal this
20th day of June, 2014.

Yvonne Clinton
Deputy Commissioner
Maritime Affairs

RLM-248                    MORTGAGEE ORIGINAL                    REV. 06/12

Execution version

## AMENDMENT TO FIRST PREFERRED MORTGAGE

**THIS AMENDMENT TO FIRST PREFERRED MORTGAGE (this "Amendment")** is made on April ___8___, 2016

**BETWEEN**

(1)     **AUDACIOUS SHIPPING & TRADING S.A.**, a corporation incorporated in the Republic of Liberia whose registered address is at 80 Broad Street, Monrovia, Liberia (the "**Owner**"); and

(2)     **JOH. BERENBERG, GOSSLER & CO. KG**, a banking institution incorporated and existing under the laws of Germany acting through its office at Neuer Jungfernstieg 20, 20354 Hamburg, Germany in the capacity of Security Trustee under the Agency and Trust Agreement referred to below (the "**Mortgagee**", which expression includes its successors and assigns).

**IS SUPPLEMENTAL TO** a First Preferred Ship Mortgage dated June 20, 2014 in favor of the Mortgagee on the whole of the Ship, which mortgage was recorded on June 20, 2014, at 8:02 A.M., E.D.S.T. at the Office of the Deputy Commissioner of Maritime Affairs of the Republic of Liberia at the Port of New York, New York, U.S.A. in Book PM 66 at Page 440.

**BACKGROUND**

(A)     The Owner is the sole owner of the whole of the Liberian flag vessel named "AUDACIOUS", Official Number 16235 (the "**Ship**").

(B)     Pursuant to a loan agreement dated June 18, 2014 as amended by a Supplemental Agreement dated June 17, 2015 (the "**Original Loan Agreement**") and made between (i) the Owner, Courageous Shipping & Trading S.A., Dauntless Shipping & Trading S.A., Defiant Shipping & Trading S.A., Fearless Shipping & Trading S.A. and Intrepid Shipping & Trading S.A., as joint and several borrowers (the "**Borrowers**"), (ii) the banks and financial institutions listed in Schedule 1 of the Loan Agreement, as Lenders (the "**Lenders**"), (iii) Joh. Berenberg, Gossler & Co. KG as Swap Bank (the "**Swap Bank**"), (iv) Joh. Berenberg, Gossler & Co. as Mandated Lead Arranger (the "**Mandated Lead Arranger**"), (v) Joh. Berenberg, Gossler & Co. as Agent (the "**Agent**") and (vi) the Mortgagee, the Mortgage made available to the Owner a term loan facility in the aggregate principal amount of (originally) up to US$30,000,000.

(C)     Pursuant to a German law form of "master agreement for financial derivatives transactions" ("Rahmenvertrag für Finanztermingeschaefte") dated June 18, 2014 (the "**Master Agreement**") and made between the Borrowers and the Swap Bank, the Swap Bank and the Borrowers agreed that they may enter into certain derivative transactions providing for, among other things, the payment of certain amounts by the Swap Bank to the Borrowers.

(D)     Pursuant to an Agency and Trust Agreement dated June 18, 2014 (the "**Agency and Trust Agreement**") between (i) the Borrowers, (ii) the Lenders, (iii) the Agent, and (iv) the Mortgagee entered into pursuant to the Loan Agreement, it was agreed that the Mortgagee would hold the Trust Property on trust for the Lenders and the Swap Banks.

(E)     As security for its obligations under the Original Loan Agreement and the Master Agreement, the Owner granted a First Preferred Mortgage dated June 20, 2014 (the "**Mortgage**") in favor of the Mortgagee on the whole of the Ship, which mortgage was recorded on June 20, 2014, at

8:02 A.M., E.D.S.T. at the Office of the Deputy Commissioner of Maritime Affairs of the Republic of Liberia at the Port of New York, New York, U.S.A. in Book PM 66 at Page 440.

(F)   The Original Loan Agreement has been amended by a Supplemental Agreement dated April 1, 2016 (the "**Supplemental Agreement**" and the Original Loan Agreement as amended by the Supplemental Agreement, the "**Loan Agreement**") among (i) the Borrowers, (ii) the Lenders, (iii) the Swap Bank, (iv) the Mandated Lead Arranger, (v) the Agent, and (vi) the Mortgagee, upon the terms and conditions of which, among other things, it was agreed to amend the Original Loan Agreement, including, among other things, an increase of the Margin as defined in the Original Loan Agreement.   A form of the Supplemental Agreement without any other attachments is annexed hereto as Exhibit A and made a part hereof.

(G)   It is a condition to the Mortgagee continuing to make the facility under the Loan Agreement available to the Borrowers that, among other things, the Owner and the Mortgagee execute and deliver this Amendment.

**NOW THEREFORE,** in consideration of the premises and other good and valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1.   **Definitions.**  Words and expressions defined in the Mortgage shall have the same meanings when used in this Amendment unless the context otherwise requires.

2.   **Confirmation of Mortgage.**  The Owner has granted, conveyed, mortgaged, pledged, confirmed, assigned, transferred and set over, and hereby grants, conveys, mortgages, pledges, confirms, assigns, transfers and sets over, the whole of the Ship unto the Mortgagee as security for the due and punctual payment of the Secured Liabilities and the performance and observance of and compliance with the covenants, terms and conditions contained in the Loan Agreement, the Master Agreement and the Mortgage.

3.   **Amendments.**  The Mortgage is hereby amended as follows:

   (a)   Each reference in the Mortgage to the "Loan Agreement" shall mean and refer to the Original Loan Agreement, as amended by the Supplemental Agreement.

   (b)   Each reference in the Mortgage to "this Mortgage", "hereunder", "hereof", "herein" or words of like import shall mean and refer to the Mortgage as amended by this Amendment.

4.   **Total amount.**  For the purpose of recording this Amendment as required by Chapter 3 of Title 21 of the Liberian Code of Laws of 1956, as amended, the total amount of the direct and contingent obligations secured by the Mortgage as amended by this Amendment is reduced to US$28,025,000, comprising (i) US$23,525,000 in respect of the Loan Agreement, and (ii) US$4,500,000 in respect of the Master Agreement, together with interest, fees and performance of mortgage covenants.  The date of maturity is December 31, 2018 and there is no separate discharge amount.

5.   **Continuing Effect.**  Except as expressly provided herein, the provisions of the Mortgage are and shall remain in full force and effect in accordance with their terms, all of which as amended hereby are ratified and confirmed.

6.     **Liberian law.**  This Amendment shall be governed by, and construed in accordance with, Liberian law.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]

3

**THIS AMENDMENT** has been executed by each of the duly authorized parties on the date first above written.

**AUDACIOUS SHIPPING & TRADING S.A.**

By: _____

Name: Frank Atcheson

Title: Attorney-in-Fact

**JOH. BERENBERG, GOSSLER & CO. KG**, as Security Trustee

By: _____

Vasiliki Kanellopoulou

Attorney-in-Fact

**ACKNOWLEDGMENT**

CITY OF NEW YORK )
) ss.:
STATE OF NEW YORK )

On this 8th day of April, 2016, before me personally appeared Frank Atcheson, to me known, who being by me duly sworn did depose and say that s/he resides at 7800 River Rd, North Bergen NJ 07047; that s/he is an Attorney-in-Fact of AUDACIOUS SHIPPING & TRADING S.A., the corporation described in and which executed the foregoing instrument; and that s/he signed her/his name thereto pursuant to authority granted to her/him by said corporation.

_____
Notary Public/Special Agent



**ACKNOWLEDGMENT**

CITY OF NEW YORK )
) ss.:
STATE OF NEW YORK )

On this 8th day of April, 2016, before me personally appeared Vasiliki Kanelinpoulou, to me known, who being by me duly sworn did depose and say that s/he resides at 250 West 55th Street, New York, NY 10019; that s/he is an Attorney-in-Fact of JOH. BERENBERG, GOSSLER & CO. KG, the company described as the Mortgagee in and which executed the foregoing instrument; and that s/he signed her/his name thereto pursuant to authority granted to her/him by said company.

_____
Notary Public/Special Agent

# EXHIBIT A

Dated __1__ April 2016

US$ 30,000,000.00
US$ 23,525,000 outstanding

**AMENDMENT NO. 2 TO LOAN AGREEMENT DATED 18 JUNE 2014**

**AUDACIOUS SHIPPING & TRADING S.A.**
**COURAGEOUS SHIPPING & TRADING S.A.**
**DAUNTLESS SHIPPING & TRADING S.A.**
**DEFIANT SHIPPING & TRADING S.A.**
**FEARLESS SHIPPING & TRADING S.A.**
**INTREPID SHIPPING & TRADING S.A.**
as joint and several Borrowers

and

**THE BANKS AND FINANCIAL INSTITUTIONS**
listed in Schedule 1
as Lenders

and

**JOH. BERENBERG, GOSSLER & CO. KG**
as Mandated Lead Arranger, Agent, Security Agent and Swap Bank

**SUPPLEMENTAL AGREEMENT**

relating to
the part-refinancing of
m.v.'s "AUDACIOUS", "COURAGEOUS", "DAUNTLESS",
"DEFIANT", "FEARLESS" and "INTREPID"

WATSON FARLEY
&
WILLIAMS

**Index**

| Clause | | Page |
|---|---|---|
| 1 | Definitions and Interpretation | 1 |
| 2 | Agreement of the Finance Parties | 2 |
| 3 | Conditions Precedent | 2 |
| 4 | Representations | 2 |
| 5 | Amendments to Loan Agreement and other Finance Documents | 3 |
| 6 | Further Agreements | 6 |
| 7 | Further Assurance | 7 |
| 8 | Fees | 7 |
| 9 | Costs and Expenses | 7 |
| 10 | Notices | 7 |
| 11 | Counterparts | 7 |
| 12 | Law and Jurisdiction | 7 |

57704144v8

**THIS AGREEMENT** is made on ⌐1⌐ April 2016

**PARTIES**

(1)   **AUDACIOUS SHIPPING & TRADING S.A., COURAGEOUS SHIPPING & TRADING S.A., DAUNTLESS SHIPPING & TRADING S.A., DEFIANT SHIPPING & TRADING S.A., FEARLESS SHIPPING & TRADING S.A. and INTREPID SHIPPING & TRADING S.A.,** each a corporation incorporated under the laws of Liberia whose registered office is at the LISCR Trust Company, 80 Broad Street, Monrovia, Liberia as joint and several **Borrowers**

(2)   **THE BANKS AND FINANCIAL INSTITUTIONS** listed in Schedule 1, as **Lenders;**

(3)   **JOH. BERENBERG, GOSSLER & CO. KG,** with its registered office at Neuer Jungfernstieg 20, 20354 Hamburg, Germany, as **Mandated Lead Arranger, Agent, Security Agent** and **Swap Bank.**

**BACKGROUND**

(A)   By the Loan Agreement, the Lenders agreed to make available to the Borrowers a facility of up to US$ 30,000,000.00 of which US$ 23,525,000 is outstanding at the date of this Agreement.

(B)   Due to the current market conditions, the Borrowers have requested to make certain pre-payments, including but not limited from insurance proceeds in respect of mv "FEARLESS", and to amend the minimum required security cover provisions of the Loan Agreement.

(C)   This Agreement sets out the terms and conditions on which the Lenders and the other Finance Parties agree, with effect on and from the Effective Date, at the request of the Borrowers, to amend the terms of clause 15.2 of the Loan Agreement and to the consequential amendment of the Loan Agreement and the other Finance Documents in connection with those matters.

**OPERATIVE PROVISIONS**

**1      DEFINITIONS AND INTERPRETATION**

**1.1    Definitions**

In this Agreement:

"**Effective Date**" means the date on which the conditions precedent in Clause 3 (*Conditions Precedent*) are satisfied.

"**Finance Parties**" means the Lenders, the Mandated Lead Arranger, the Agent, the Security Agent and the Swap Bank.

"**Loan Agreement**" means the loan agreement dated 18 June 2014, as amended by a supplemental agreement dated 17 June 2015 and made between, amongst others, (i) the Borrowers, (ii) the Lenders, (iii) the Agent and, (iv) the Security Agent.

**1.2    Defined expressions**

Defined expressions in the Loan Agreement shall have the same meanings when used in this Agreement unless the context otherwise requires or unless otherwise defined in this Agreement.

**1.3    Application of construction and interpretation provisions of Loan Agreement**

Clause 1.2 (*construction of certain terms*) of the Loan Agreement applies to this Agreement as if it were expressly incorporated in it with any necessary modifications.

**1.4    Designation as a Finance Document**

The Borrowers and the Finance Parties designate this Agreement as a Finance Document.

**2    AGREEMENT OF THE FINANCE PARTIES**

**2.1    Agreement of the Lenders**

The Lenders agree, subject to and upon the terms and conditions of this Agreement, to amend the loan to value provisions in accordance with the terms and conditions of this Agreement.

**2.2    Agreement of the Finance Parties**

The Finance Parties agree, subject to and upon the terms and conditions of this Agreement, to the consequential amendment of the Loan Agreement and the other Finance Documents in connection with the matters referred to in Clause 2.1 (*Agreement of the Lenders*).

**2.3    Effective Date**

The agreement of the Lenders and the other Finance Parties contained in Clauses 2.1 (*Agreement of the Lenders*) and 2.2 (*Agreement of the Finance Parties*) shall have effect on and from the Effective Date.

**3    CONDITIONS PRECEDENT**

The agreement of the Lenders and the other Finance Parties contained in Clause 2.1 (*Agreement of the Lenders*) and 2.2 (*Agreement of the Finance Parties*) is subject to:

(a)    no Default continuing on the date of this Agreement and the Effective Date or resulting from the occurrence of the Effective Date;

(b)    the representations and warranties in clause 10 of the Loan Agreement to be made by each Borrower being true on the date of this Agreement and the Effective Date;

(c)    the Agent having received all of the documents and other evidence listed in Schedule 2 (*Conditions Precedent*) in form and substance satisfactory to the Agent on or before the date of this agreement or such later date as the Agent may agree with the Borrowers.

**4    REPRESENTATIONS**

**4.1    Loan Agreement representations**

Each Borrower makes the representations and warranties set out in clause 10 (*representations and warranties*) of the Loan Agreement (other than pursuant to clause 10.10 of the Loan Agreement), as amended and supplemented by this Agreement and updated with appropriate modifications to refer to this Agreement, by reference to the circumstances then existing on the date of this Agreement.

**4.2    Finance Document representations**

Each Borrower makes the representations and warranties set out in the Finance Documents (other than the Loan Agreement) to which it is a party, as amended and supplemented by this Agreement and updated with appropriate modifications to refer to this Agreement, by reference to the circumstances then existing on the date of this Agreement.

2                                                              57704144v8

**4.3**     **No Default**

No Event of Default or Potential Event of Default has occurred other than contemplated and anticipated by this Agreement.

**5**     **AMENDMENTS TO LOAN AGREEMENT AND OTHER FINANCE DOCUMENTS**

**5.1**     **Specific amendments to the Loan Agreement**

With effect on and from the Effective Date the Loan Agreement shall be, and shall be deemed by this Agreement to be, amended as follows:

(a)     by replacing the definition of "Margin" in clause 1.1 (*Definitions*) as follows:

""**Margin**" means:

(a)     4.500 per cent. per annum; and

(b)     4.0625 per cent. per annum for the quarter following the end of the relevant Interest Period, in case on the date the Lenders fix the rate of interest in accordance with this Agreement for the subsequent Interest Period:

(i)     the amount of US$ 4,950,000.00 pursuant to Clause 11.20 (a) is paid; and

(ii)     the loan to value ratio calculated pursuant to Clause 15.1 is below 50 per cent."

(b)     by inserting a new definition "Supplemental Agreement No. 2" as follows:

""**Supplemental Agreement No. 2**" means a supplemental agreement dated _1_ April 2016 to this Agreement;";

(c)     by classifying the wording in clause 8.5 (*Voluntary Prepayments*) as paragraph (a);

(d)     by inserting a new paragraph (b) in clause 8.5 (*Voluntary Prepayments*) as follows:

"The Borrowers and the Lenders agree that the amount of US$ 2,100,000.00 standing to the credit of the Minimum Liquidity Reserve Account at the date of the Supplemental Agreement No. 2 will be used to prepay the Loan in order and manner pursuant to Clause 8.11 on the date of the Supplemental Agreement No. 2. Thereafter, the Borrowers shall not be required to maintain any liquidity on the Minimum Liquidity Reserve Account.";

(e)     by inserting a new paragraph (c) in clause 8.5 (*Voluntary Prepayments*) as follows:

"The amount of US$ 1,850,000.00 consisting of the payments made pursuant to clauses 6.2 and 6.3 of the Supplemental Agreement No. 2 and standing to the credit of the Debt Service Reserve Account shall be used to pay the repayment instalments having fallen due on 31 March 2016 and falling due on 30 June 2016 in accordance with Clause 8.1."

(f)     by inserting a new paragraph (d) in clause 8.5 (*Voluntary Prepayments*) as follows:

"The amount of US$ 4,950,000.00 received by the Agent pursuant to Clause 11.20 shall be applied to prepay the Loan in the following order and manner:

(i)     Firstly, the sum of US$ 925,000.00 shall be applied in settlement in full of the repayment instalment due on 30 September 2016;

(ii) Secondly, the sum of US$ 925,000.00 shall be applied in settlement in full of the repayment instalment due on 31 December 2016;

(iii) Thirdly, the sum of US$ 925,000.00 shall be applied in settlement in full of the repayment instalment due on 31 March 2017;

(iv) Fourthly, the sum of US$ 925,000.00 shall be applied in settlement in full of the repayment instalment due on 30 June 2017;

(v) Fifthly, the sum of US$ 925,000.00 shall be applied in settlement in full of the repayment instalment due on 30 September 2017; and

(iv) Sixthly, the sum of US$ 325,000.00 shall be applied in and towards the repayment instalment due on 31 December 2017 reducing that instalment to US$ 600,000.00."

(g) by replacing clause 11.20 (*Maintenance of minimum liquidity*) with the following new clause 11.20 (*Specific Prepayments*):

**"11.20 Specific prepayments.**

(a) The Borrowers expect to receive an amount of US$ 7,450,000 (the "Total Insurance Receivable") from the hull and machinery insurance underwriters and the innocent owners insurance underwriters of m.v. "FEARLESS" (together, the "Insurance Underwriters") pursuant to settlement agreements to be made with the Insurance Underwriters.

(b) The Borrowers undertake to ensure that the Insurance Underwriters shall pay from the Total Insurance Receivable an amount of US$ 4,950,000.00 to the Agent into an account nominated by the Agent.

(c) After application of prepayments pursuant to Clause 8.5(d), any amount exceeding the amount of US$ 4,950,000.00 received by the Borrowers from the Insurance Underwriters may be used by the Borrowers for the operation, maintenance and chartering of the Ships and general corporate purposes of the Borrowers, including the payment of bank interest and principal payments."

(h) by inserting the following new clause 11.21 (*Vessel reports*):

**"11.21 Vessel reports.**  Each Borrower undertakes to provide, within 30 calendar days after the end of the preceding calendar quarter or on request of the Agent within 10 calendar days after the end of each month in that calendar quarter, to the Agent a receivables/liabilities report and an employment report for each Ship prepared on a calendar quarterly basis."

(i) by replacing the wording in clause 15.1 (*Minimum required security cover*) with the following wording:

"Clause 15.2 applies if the Agent notifies the Borrowers that the Loan (after deducting all amounts standing to the credit of the Drydocking Reserve Account, Minimum Liquidity Account and the Debt Service Reserve Account and, during the calendar year 2016, the amount of the Total Insurance Receivable less any part thereof which has been applied in accordance with Clause 8.5(d)) is:

(i) until 30 June 2017, above 60 per cent.; and

(ii) in the period of time between 1 July 2017 and 31 December 2017, above 55 per cent.; and

4

       (iii)       from 1 January 2018 on, above 50 per cent.,

of:

      (a)       the average of the aggregate market values (determined as provided in Clause 15.3) of the Ships or, if market values are not available, the aggregate net scrap values (determined as provided in Clause 15.3) of the Ships; plus

      (b)       the net realisable value of any additional security previously provided under this Clause 15.";

(j)       by replacing the wording in clause 15.2 (*Provision of additional security, prepayment*) with the following wording:

"If the Agent serves a notice on the Borrowers under Clause 15.1, the Borrowers shall prepay such part (at least) of the Loan as will eliminate the shortfall on or before the date falling 45 days after the date on which the Agent's notice is served under Clause 15.1 (the **"Prepayment Date"**) unless at least 1 Business Day before the Prepayment Date they have:

(a) provided, or ensured that a third party has provided, additional security which, in the opinion of the Majority Lenders, has a net realisable value at least equal to the shortfall and which has been documented in such terms as the Agent may, with the authorisation of the Majority Lenders, approve or require; or

(b) prepaid the following quarterly principal instalments as required to eliminate the shortfall; or

(c) provided the Agent with signed memoranda of agreements for the sale of a Ship on market standard terms and conditions and at a bargain made at arm's length; or

(d) exchanged a Ship with another ship at a collateral value of at least the same amount which is sufficient to ensure that the ratio of the Loan to the (aggregate) market value of the Ships (excluding the to be exchanged Ship but including the new ship) is immediately after the exchange in accordance with Clause 15.1.";

(k)       by adding the words "and, unless an Event of Default has occurred and is continuing, limited to four requests per year thereafter" at the end of clause 15.3(a) (*Valuation of the Ships*);

(l)       by replacing the fax number of the Borrowers in clause 28.2(a) with the following number:

"+302104291430";

(m)       the definition of, and references throughout to, each Finance Document shall be construed as if the same referred to that Finance Document as amended and supplemented by this Agreement; and

(n)       by construing references throughout to "this Agreement" and other like expressions as if the same referred to the Loan Agreement as amended and supplemented by this Agreement.

**5.2**       **Amendments to Finance Documents**

With effect on and from the Effective Date each of the Finance Documents other than the Loan Agreement, shall be, and shall be deemed by this Agreement to be, amended as follows:

(a)       the definition of, and references throughout each of the Finance Documents to, the Loan Agreement and any of the other Finance Documents shall be construed as if the same

referred to the Loan Agreement and those Finance Documents as amended and supplemented by this Agreement; and

(b)    by construing references throughout each of the Finance Documents to "this Agreement" and other like expressions as if the same referred to such Finance Documents as amended and supplemented by this Agreement.

**5.3    Finance Documents to remain in full force and effect**

The Finance Documents shall remain in full force and effect as amended and supplemented by:

(a)    the amendments to the Finance Documents contained or referred to in Clause 5.1 (*Specific amendments to the Loan Agreement*) and Clause 5.2 (*Amendments to Finance Documents*); and

(b)    such further or consequential modifications as may be necessary to give full effect to the terms of this Agreement.

**6        FURTHER AGREEMENTS**

**6.1    Prepayment Fees**

The Agent on behalf of the Majority Lenders waives the prepayment fee pursuant to the Fee Letter for prepayments made in accordance with this Agreement.

**6.2    Shareholder's contribution**

The Borrowers shall ensure that the Shareholder pays an amount of US$ 905,000.00 into the Debt Service Reserve Account on a non-refundable basis towards the obligations of the Borrowers under the Finance Documents on the date of signing of this Agreement.

**6.3    Borrowers' transfer**

The Borrowers shall pay from the Drydocking Reserve Account an amount of US$ 945,000.00 into the Debt Service Reserve Account on the date of signing of this Agreement.

**6.4    Vessel reports**

Each Borrower undertakes to ensure that Phoenix Shipping & Trading S.A. as commercial manager will provide, within 30 calendar days after the end of the preceding calendar quarter or on request of the Agent within 10 calendar days after the end of each month in that calendar quarter, to the Agent a receivables/liabilities report and an employment report prepared on a calendar quarterly basis for the m/v "VIGOROUS" and m/v "BRAZEN".

**6.5    Shareholder's new building contracts**

The Borrowers shall provide the Agent with a resolution of the directors of the Shareholder confirming that the directors have declared a dividend consisting of all of the Shareholders' shares in each of its Liberian subsidiaries Valiant Shipping & Trading S.A., Resolute Shipping & Trading S.A., Ardent Shipping & Trading S.A. and Daring Shipping & Trading S.A. (each of which has entered into a newbuilding contract) to its holders of common stock of record as of the date hereof, pro rata in proportion to their existing shareholding.

57704144v8

**6.6**   **Amendment of Mortgages**

Each Borrower shall effect an amendment in Agreed Form to the relevant Mortgage that reflects the changes to the Loan Agreement contemplated by this Agreement within a reasonable time after execution of this agreement.

**7**   **FURTHER ASSURANCE**

**7.1**   **Further assurance**

Each Borrower shall promptly, and in any event within the time period specified by the Agent do all such acts (including procuring or arranging any registration, notarisation or authentication or the giving of any notice) or execute or procure execution of all such documents (including notices, instructions, acknowledgements, proxies and powers of attorney), as the Agent may specify (and in such form as the Agent may require in favour of the Agent or its nominee(s)) to implement the terms and provisions of this Agreement.

**7.2**   **Additional corporate action**

At the same time as a Borrower delivers to the Agent or Security Agent any document executed under this Clause 7 (*Further assurance*) that Borrower shall deliver to the Agent or Security Agent as applicable reasonable evidence that that Borrower's execution of such document has been duly authorised by it.

**8**   **FEES**

The Borrowers shall pay to the Agent (for the account of each Lender) an amendment fee in the amount of US$ 100,000.00 which fee shall be due and payable together with the balloon payment pursuant to clause 8.1 (*Amount of repayment instalments*) of the Loan Agreement.

**9**   **COSTS AND EXPENSES**

Clause 20.3 (*costs of variations, amendments, enforcement etc.*) of the Loan Agreement, as amended and supplemented by this Agreement, applies to this Agreement as if it were expressly incorporated in it with any necessary modifications.

**10**   **NOTICES**

Clause 28 (*notices*) of the Loan Agreement, as amended and supplemented by this Agreement, applies to this Agreement as if it were expressly incorporated in it with any necessary modifications.

**11**   **COUNTERPARTS**

This Agreement may be executed in any number of counterparts, and this has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

**12**   **LAW AND JURISDICTION**

**12.1**   **German law**

This Agreement and any non-contractual obligations arising out of or in connection with it shall be governed by, and construed in accordance with, German law.

**12.2**   **Exclusive German jurisdiction**

Subject to Clause 12.1, the courts of Hamburg, Germany shall have exclusive jurisdiction to settle any Dispute.

**12.3     Choice of forum for the exclusive benefit of the Creditor Parties**

Clause 12.2 is for the exclusive benefit of the Creditor Parties, each of which reserves the right:

(a)     to commence proceedings in relation to any Dispute in the courts of any country other than Germany and which have or claim jurisdiction to that Dispute; and

(b)     to commence such proceedings in the courts of any such country or countries concurrently with or in addition to proceedings in Germany or without commencing proceedings in Germany.

No Borrower shall commence any proceedings in any country other than Germany in relation to a Dispute.

**12.4     Process agent**

Each Borrower irrevocably appoints DPC Consult GmbH (Attention: Dr. Jan Dreyer) at their office, for the time being presently at Große Elbstraße 36, 22767 Hamburg, Germany, to act as its agent to receive and accept on its behalf any process or other document relating to any proceedings in the German courts which are connected with a Dispute.

**This Agreement has been entered into on the date stated at the beginning of this Agreement.**

57704144v8

**SCHEDULE 1**

**THE LENDERS**

| **Lender** | **Lending Office** |
| --- | --- |
| Joh. Berenberg, Gossler & Co. KG | Neuer Jungfernstieg 20, 20354 Hamburg, Germany |

57704144v8

**SCHEDULE 2**

**CONDITIONS PRECEDENT**

1  Copies of resolutions of the shareholders and directors of each Borrower authorising the execution of this Agreement and, in the case of the shareholders, confirming that the directors may dispose of a Ship or Ships without further consultation with the shareholders.

2  Bring-down certificate of each Borrower in relation to the corporate documents submitted to the Agent so far.

3  Receipt by the Agent of the payments into the Debt Service Reserve Account pursuant to Clause 6.2 and Clause 6.3.

4  A duly executed original of each amendment to the Mortgages as set out in Clause 6.6.

5  Documentary evidence that each amendment to the Mortgages as set out in Clause 6.6 has been duly registered against each relevant Ship.

6  Receipt by the Agent of a letter in form and substance acceptable to the Agent from the Shareholder approving and consenting to the terms and conditions of this Agreement, including but not limited to the new clause 15.2 (*Provision of additional security, prepayment*) of the Loan Agreement.

7  Favourable legal opinions from lawyers appointed by the Agent on such matters concerning the law of Liberia and such other relevant jurisdictions as the Agent may require, substantially in the form distributed to the Agent before signing this Agreement.

8  A copy of any other authorisation or other document, opinion or assurance which the Agent considers to be necessary or desirable (if it has notified the Borrowers accordingly) in connection with the entry into and performance of the transactions contemplated by this Agreement or for the validity and enforceability of any Finance Document as amended and supplemented by this Agreement.

9  Evidence that the fees, costs and expenses then due from the Borrowers pursuant to Clause 8 (*Fees*) and Clause 9 (*Costs and Expenses*) have been paid or will be paid by the Effective Date.

57704144v8

EXECUTION PAGES

**BORROWERS**

SIGNED by )
GEORGE GOURBOMICHALIS )
for and on behalf of )
**AUDACIOUS SHIPPING &** )
**TRADING S.A.** )

SIGNED by )
GEORGE GOURDOMICHALIS )
for and on behalf of )
**COURAGEOUS SHIPPING &** )
**TRADING S.A.** )

SIGNED by )
GEORGE GOURDOMICHALIS )
for and on behalf of )
**DAUNTLESS SHIPPING &** )
**TRADING S.A.** )

SIGNED by )
GEORGE GOURDOMICHALIS )
for and on behalf of )
**DEFIANT SHIPPING &** )
**TRADING S.A.** )

SIGNED by )
GEORGE GOURDOMICHALIS )
for and on behalf of )
**FEARLESS SHIPPING &** )
**TRADING S.A.** )

SIGNED by )
GEORGE GOURDOMICHALIS )
for and on behalf of )
**INTREPID SHIPPING &** )
**TRADING S.A.** )

11                                            57704144v8

**LENDERS, AGENT and SECURITY AGENT**

**SIGNED by**                     )

for and on behalf of        )
**JOH. BERENBERG,**      )
**GOSSLER & CO. KG**       )

Mäcking                              F. Aschenbrenner

12

57704144v8



## THE REPUBLIC OF LIBERIA
### LIBERIA MARITIME AUTHORITY

99 Park Avenue, Suite 1830
New York, NY, 10016, USA
Tel: +1 212 697 3434
Fax: +1 212 697 5655
E-mail: registrations@liscr.com
Website: www.liscr.com

## OFFICE OF THE DEPUTY COMMISSIONER
## OF MARITIME AFFAIRS OF THE
## REPUBLIC OF LIBERIA

_8_ Day, _April_ Month, _2016_ Year

**Received for record at** _10_ h _01_ m AM , E.D.S.T.

**Recorded in BOOK** _PM 68_ at PAGE _274_ .

**Name of Vessel :** AUDACIOUS

**Official Number :** 16235

GIVEN under my hand and seal this
8th day of April, 2016.

Yvonne Clinton
Deputy Commissioner
Maritime Affairs

RLM-248                    MORTGAGEE ORIGINAL                    REV. 06/12